IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **COUNCIL FOR EDUCATIONAL TRAVEL, USA,** | : : : |
| **Plaintiff** | : **CIVIL NO. 1:11-CV-00672** : : |
| v. | : : : |
| **AGATA CZOPEK and HARRISTOWN DEVELOPMENT CORPORATION,** | : : **Judge Sylvia H. Rambo** : : |
| **Defendants** | : : |

# **M E M O R A N D U M**

Before the court are Defendants Harristown Development Corporation ("HDC") and Agata Czopek's ("Czopek") motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. (Docs. 12 & 17.) For the reasons set forth below, the motions will be granted in part and denied in part.

## **I.     Background**[1]

### **A.     Parties**

Plaintiff, Council for Educational Travel, USA ("CETUSA") is a non-profit organization that is dedicated to promoting the understanding of different cultures. (Compl. ¶ 6.) CETUSA works to coordinate employment opportunities for exchange students from all over the world. (*Id.*)  Defendant HDC is a corporation

---

[1] As required when deciding a motion to dismiss, the court will accept as true all well-pleaded factual allegations contained in the complaint.

with its principal place of business in Pennsylvania.² (*Id.* ¶ 3.) Defendant Czopek was hired by CETUSA to manage its client accounts for those clients located in the region around Harrisburg, Pennsylvania. (*Id.* ¶ 12.)

### B. Facts

During her employment with CETUSA, Czopek was provided with client lists and other proprietary information including, but not limited to, a list of CETUSA's overseas partners. (*Id.* ¶ 13.) On December 22, 2009, Czopek signed a written acknowledgment in which she agreed to return:

> all tangible and intangible property belonging to CETUSA issued to [the employee], or created by [the employee] as an employee during [the employee's] employment, including but not limited to . . . documents relating or pertaining to potential contacts, contracts, coordinators, clients, host families, mailing lists, account information, samples, prototypes, price lists, pricing information . . . .

(*Id.* ¶ 14.) Additionally, the acknowledgment states: "I further represent and warrant that I will not retain any copies, electronic or otherwise, of such property upon separation of employment with CETUSA." (*Id.*)

On November 5, 2010, Czopek left her employment at CETUSA without any advance notification and began working at HDC. (*Id.* ¶ 16.) The complaint alleges that Czopek did not return any documents "relating or pertaining to potential contacts, contracts, coordinators, clients, host families, mailing lists, account information, samples, prototypes, price lists, [or] pricing information" upon her termination. (*Id.* ¶ 17.) It further alleges that if she is permitted to continue working at HDC, CETUSA will suffer irreparable injury. (*Id.* ¶ 18.) Lastly, the

---

² Although not stated in Plaintiff's complaint, Plaintiff's response to HDC's motion indicates that HDC is a competitor of CETUSA. (Doc. 16 at 5.)

complaint avers that Czopek and HDC have divulged and continue to divulge, make use of, and profit from this information, including but not limited to CETUSA's client lists, fees charged, and other proprietary information concerning CETUSA's relationship with clients. (*Id.* ¶ 19.)

### C. Procedural History

On April 11, 2011, Plaintiff filed its complaint claiming (1) misappropriation of trade secrets in violation of the Pennsylvania Uniform Trade Secrets Act, 12 PA. CONS. STAT. § 5301, *et seq.* ("PUTSA") against Czopek and HDC (Count I); (2) breach of fiduciary duty and duty of loyalty against Czopek (Count II); and (3) intentional interference with actual and prospective contractual relations against Czopek and HDC (Count III). (Doc. 1.) Defendant HDC filed its motion to dismiss on May 9, 2011 (Doc. 12) and brief in support on May 23, 2011 (Doc. 14). Plaintiff filed a brief in opposition on June 8, 2011 (Doc. 16) to which HDC replied on June 27, 2011 (Doc. 19). Defendant Czopek filed a motion to dismiss on June 13, 2011 (Doc. 17) and brief in support on June 21, 2011 (Doc. 18). A brief in opposition was filed on June 30, 2011 (Doc. 20) and reply brief on July 15, 2011 (Doc. 22). Thus, both motions are ripe for disposition.

## II. Standard

When presented with a motion to dismiss for failure to state a claim, the court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions," *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009), and ultimately must determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211

(quoting *Ashcroft v. Iqbal*, ___U.S.___, 129 S. Ct. 1937, 1950 (2009)). Additionally, the court must "accept as true all factual allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Kanter v. Barella*, 489 F.3d 170, 177 (3d Cir. 2007) (quoting *Evancho v. Fisher*, 423 F.3d 347, 350 (3d Cir. 2005)). The complaint must do more than allege the plaintiff's entitlement to relief; it must "show such an entitlement with its facts." *Fowler*, 578 F.3d at 211 (citations omitted). As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a) (alterations in original)). In other words, a claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." *Id.*

"To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted); *see also Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). The court may consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] document[s]." *Pension Benefit*, 998 F.2d at 1196. Additionally, "documents whose contents are alleged in the complaint

and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) (citation omitted); *see also U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.") (internal quotation omitted). However, the court may not rely on other parts of the record in making its decision. *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

**III.     Discussion**

  **A.     Misappropriation of Trade Secrets under PUTSA**

   Both HDC and Czopek raise three arguments for dismissal of CETUSA's misappropriation of trade secrets claim. First, they claim that CETUSA failed to specifically allege that a non-compete agreement was executed between Czopek and CETUSA. Second, they claim that CETUSA failed to identify what specific confidential information was misappropriated. Lastly, to the extent that CETUSA is alleging that Czopek misappropriated client lists, Defendants argue that an employee's personal contacts while made during plaintiff's employ are not trade secrets. For the reasons below, the court disagrees.

   First, although the complaint does not specifically reference a "non-compete agreement" or "confidentiality agreement," it does state that CETUSA requires its staff to sign an "acknowledgment" that, as noted above, expressly requires the return of tangible and intangible proprietary and confidential

information upon separation of employment with CETUSA including, *inter alia*, client lists and account information.

Under PUTSA, misappropriation does not necessarily require that a restrictive covenant be executed. A "misappropriation" is defined under the statute as:

> (1) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) disclosure or use of a trade secret of another without express or implied consent by a person who:
>
>> (i) used improper means to acquire knowledge of the trade secret;
>>
>> (ii) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was:
>>
>>> (A) derived from or through a person who had utilized improper means to acquire it;
>>>
>>> (B) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or
>>>
>>> (C) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or
>>
>> (iii) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

12 PA. CONS. STAT. § 5302. Thus, the statute only requires that the misappropriating party knew or had reason to know that a trade secret was acquired under circumstances requiring a duty to maintain secrecy or otherwise limit its use. *See EXL Labs., LLC v. Kris Egolf, et al.*, 2011 U.S. Dist. LEXIS 25295, at *19-20 (E.D. Pa. March 11, 2011) (finding that a lack of a signed confidentiality agreement is not

necessarily dispositive to plaintiff's PUTSA claim especially where other precautions are taken by plaintiff).

Here, the complaint alleges that Czopek signed an acknowledgment that restricts the use of and promises to return certain proprietary and confidential information.  (*Id.* ¶ 14.)  Thus, Plaintiff's argument ultimately fails because these averments allow the court to reasonably infer that the alleged trade secrets were acquired under circumstances giving rise to a duty to maintain secrecy or otherwise limit their use and indeed suggest the existence of a restrictive covenant of some form.  Accordingly, Defendants' motions will be denied in this regard.

Secondly, the Defendants, citing *Bioquell v. Feinstein*, 2010 U.S. Dist. LEXIS 124077 (E.D. Pa. Nov. 23, 2010), argue that the complaint is deficient because it does not identify the specific trade secrets allegedly misappropriated.  In *Bioquell*, the complaint averred that "trade secrets were acquired during the course of . . . employment with Plaintiff, said trade secrets were not generally available to the public, and that the [defendant] induced the [former employee] to engage in the misappropriation of said trade secrets." *Id.* at *16.  The court concluded that this complaint was "merely a string of conclusory statements devoid of any factual basis" and thus dismissed the misappropriation claim.  *Id.* at *17.

Notwithstanding the holding in *Bioquell*, other courts in the Third Circuit have not required a plaintiff to describe trade secrets with particularity in order to survive a motion to dismiss.  In *Center Pointe Sleep Assocs., LLC v. Panian*, the court found that a general description of the trade secrets at issue was sufficient, noting that the exact trade secret in question need not be pleaded with particularity. 2009 U.S. Dist. LEXIS 21808, at *10 (W.D. Pa. March 18, 2009).  There, the

complaint described the trade secrets at issue as relating to "the truck driver sleep apnea screening proposal designed by Center Pointe" as well as "client and prospective client lists" and "marketing materials and strategies of Center Pointe." *Id.* at *4. The court found that this general description sufficiently described the alleged trade secrets at issue. *Id.* at *10. Similarly, in *Ideal Aerosmith, Inc. v. Acutronic USA, Inc.*, the court found that the complaint was sufficient where it described the alleged trade secrets as "information concerning the development, marketing and sale of Ideal's Aero 4000 motion controller, customer communications and other property." 2007 U.S. Dist. LEXIS 91644, at *22-23 (W.D. Pa. Dec. 13, 2007); *see also Pennfield Precision, Inc. v. EF Precision, Inc.*, 2000 U.S. Dist. LEXIS 11971, at *10 (E.D. Pa. Aug. 15, 2000) ("[C]ourts are in general agreement that trade secrets need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secret."); *Reckitt Benckiser Inc., et al., v. Tris Pharma, Inc., et al.*, 2011 U.S. Dist. LEXIS 19713, at *9 (3d Cir. Feb. 28, 2011) ("[A] claim of misappropriation of trade secret 'does not require specific pleading of the precise information that constitutes the trade secret in order to survive a motion to dismiss.'") (interpreting New Jersey law) (internal citations omitted).

      Here, Plaintiff does not plead misappropriation of a general, generic trade secret, but specifies that the trade secrets allegedly involved include CETUSA's strategic business and marketing plans, computer programs and codes, client lists and information regarding client accounts, employee rosters and compensation terms. (Compl. ¶ 8.) The court finds this description to be more than a mere formulaic recitation of the elements of the cause of action. Indeed, the type

of information alleged to be confidential and proprietary is within the scope of protectable trade interests. *See BIEC Int'l, Inc. v. Global Steel Serv., Ltd.*, 791 F. Supp. 489, 544-47 (E.D. Pa. 1992) (customer lists, costing and pricing plans, marketing strategies, financial projections, and terms of customer accounts may qualify as trade secrets). Thus, the motions will be denied in this regard.

Lastly, Defendants argue that Plaintiff's misappropriation of trade secret claim must be dismissed because the complaint fails to articulate any trade secret at all. Defendants argue that personal business contacts made while in plaintiff's employ do not constitute trade secrets. (Doc. 14 at 10 of 22; Doc. 18 at 8 of 15 (both citing *Nat'l Risk Mgmt., Inc. v. Bramwell*, 819 F. Supp. 417, 431 (E.D. Pa. 1993)). The court notes initially that although Czopek's "personal business contacts" could implicate the client lists and accounts allegedly misappropriated, Plaintiff also cites other alleged trade secrets including business and marketing plans, computer programs and codes, and employee information that are not derived from personal business contacts. More importantly, questions of whether or not trade secrets exist are questions of fact, and thus not appropriate for resolution on motions to dismiss. *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 1995 U.S. Dist. LEXIS 10807, at *30 (E.D. Pa. July 27, 1995) (citing *West Mountain Poultry Co. v. Gress*, 455 A.2d 651, 652 (Pa. Super. 1982)). Here, Plaintiff sufficiently pleaded the existence of trade secrets and Defendants are disputing the validity of those averments. At this stage, the court is obligated to accept those well-pleaded facts contained in the complaint as true and thus Defendants' factual challenges are premature and Defendants' motions are denied.

### B. Breach of Fiduciary Duty and Duty of Loyalty

Defendant Czopek argues for dismissal of Plaintiff's breach of fiduciary duty and duty of loyalty claim, again alleging that Plaintiff has alleged only conclusions, not facts, to support such a claim. Specifically, Czopek argues that Plaintiff has not alleged a breach of fiduciary duty because it failed to identified specifically which corporate opportunities were diverted, what confidential or trade secret information was shared, or that CETUSA was injured by Czopek's alleged conduct. Here again, Defendant's motion will be denied.

In order to allege a claim for breach of fiduciary duty, a plaintiff must first establish that a fiduciary or confidential relationship exists. *Bioquell*, 2010 U.S. Dist. LEXIS 124077, at *15; *Baker v. Family Credit Counseling Corp.*, 440 F. Supp. 2d 392, 414 (E.D. Pa. 2006). Additionally, a plaintiff must also allege that (1) the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) the plaintiff suffered injury; and (3) the defendant's failure to act solely for the plaintiff's benefit was a real factor in bringing about plaintiff's injuries. *Bioquell*, 2010 U.S. Dist. LEXIS 124077, at *15; *Baker*, 440 F. Supp. 2d at 414-15.

Here, Plaintiff alleges that Czopek was an employee of CETUSA and held a "high level and key position" wherein she was provided with CETUSA's client lists and other proprietary information. (Compl. ¶¶ 12, 13, 34.) Plaintiff further alleges that Czopek signed a written acknowledgment to return the proprietary information at the conclusion of her employment. (*Id.* ¶ 14.) The court is satisfied that these allegations sufficiently establish the existence of a confidential or fiduciary relationship. Likewise, Plaintiff sufficiently alleges that Czopek failed

to act in good faith and for the benefit of Plaintiff by alleging that Czopek "suddenly and abruptly left her employment at CETUSA and began working for HDC" and has breached her fiduciary duty and duty of loyalty by "diverting or attempting to divert corporate opportunities," "sharing the confidentially, trade secret and/or [other] proprietary information," and "soliciting and/or diverting CETUSA's clientele to Defendants Czopek and HDC." (*Id.* ¶¶ 16, 35.) Thus, Plaintiff's allegations contain more than a formulaic "Czopek breached her fiduciary duty" claim and instead provide sufficient factual allegations to state a plausible claim.

    The court also finds that Plaintiff sufficiently pleaded injury and that Czopek's failure to act solely for Plaintiff's benefit was the real factor in bringing about those injuries. Specifically, Plaintiff alleges that as a direct and proximate result of Czopek's above-mentioned breach of fiduciary duty, "CETUSA has suffered immediate irreparable harm, including but not limited to the loss of tangible economic opportunities that Defendant Czopek intentionally and wrongfully diverted to her current employer . . . ." (*Id.* ¶ 37.) In order for a breach of fiduciary duty claim and misappropriation of trade secrets claim to survive a 12(b)(6) motion, a plaintiff need not plead specific damages. *First Am. Marketing Corp. v. Canella*, 2004 U.S. Dist. LEXIS 2251, at *25 (E.D. Pa. Jan. 26, 2004). Accordingly, Defendant Czopek's motion to dismiss Plaintiff's breach of fiduciary duty and duty of loyalty claim will be denied.[3]

---

[3] Arguably, the breach of loyalty claim could be distinguished from the breach of fiduciary duty claim. *See Bro-Tech Corp. v. Thermax, Inc.,* 651 F. Supp. 2d 378, 414 (E.D. Pa. 2009) (An employee may be liable for breach of loyalty where the employee "while still working for her employer, makes improper use of her employer's trade secrets or confidential information, usurps a business opportunity from the employer, or, in preparing to work for a rival business, solicits customers for such rival business . . . ."). Here, however, Czopek makes no argument for dismissal of the breach of
(continued...)

### C.     <u>Intentional Interference with Actual and Prospective Contractual Relations</u>

Plaintiff alleges that Defendants engaged in wrongful actions including diverting corporate opportunities from CETUSA, sharing confidential and/or trade secret information without authorization, and soliciting and/or diverting CETUSA's clientele to HDC. (Compl. ¶ 42.) Plaintiff alleges that by engaging in such wrongful conduct "the economic relationships between CETUSA and its clients and/or prospective clients were actually interfered with and/or disrupted." (*Id.* ¶¶ 44, 45.)

In claiming interference with existing and prospective contractual relations, Plaintiff is alleging two distinct torts. To sufficiently state a claim for these claims, Plaintiff must allege: (1) the existence of a contractual or prospective contractual relation between itself and a third party; (2) purposeful action on the part of the defendant, specifically intended to harm the existing relation, or to prevent the prospective relation from occurring; (3) the absence of a privilege or justification on the part of the defendant; and (4) actual legal damage. *Pilot Air Freight Corp. v. Sandair, Inc.*, 118 F. Supp. 2d 557, 562-63 (E.D. Pa. 2000) (citing *Brokerage Concepts, Inc. v. U.S. Healthcare, Inc.*, 140 F.3d 494, 529 (3d Cir. 1998)). In addition, for prospective contracts, Plaintiff must allege a reasonable likelihood that the relationship would have occurred but for the interference of the defendant. *Id.* at 563.

For a claim of interference with an existing contract to withstand 12(b)(6) scrutiny, Plaintiff must allege the existence of a contractual relationship

---

[3](...continued)
loyalty claim. Given the closely-related nature of the breach of fiduciary duty and breach of loyalty claims, and Czopek's failure to separately address the breach of loyalty issue, the court will allow Count II to proceed on both claims.

with an identified third party. Courts have held that because the subject contract actually exists, a claim for intentional interference with contractual relations must include "definite, exacting identification." *Square D Co. v. Scott Elec. Co.*, 2008 U.S. Dist. LEXIS 39974, at *13 (W.D. Pa. May 16, 2008) (citing *Kelly-Springfield Tire Co. v. D'Ambro*, 596 A.2d 867, 872 (Pa. Super. 1991) (dismissing counterclaim for interference with existing or prospective business relations because Defendant "failed to even provide a name with whom the alleged relationship exists.")); *see also Bioquell*, 2010 U.S. Dist LEXIS 124077, at *19 (dismissing claim for tortious interference with business relations because "Plaintiff fail[ed] to identify a single contract or client that it lost as a result of Defendants' actions"). Here, Plaintiff only alleges that Defendants' actions interfered with "CETUSA's relationship*s with clients and/or prospective clients*." (Compl. ¶¶ 41, 43, 46) (emphasis added). Because Plaintiff fails to identify a single client, or point to a single contract that was subject to alleged interference, this claim must be dismissed.

Likewise, to claim interference with prospective contractual relations, a plaintiff must "allege a reasonable probability that he would have entered into a contractual relationship with a third party." *Flannery v. Mid Penn Bank*, 2008 U.S. Dist. LEXIS 97978, at *26 (M.D. Pa. Dec. 3, 2008). This requires the plaintiff to identify with sufficient precision which, if any, prospective contracts it would have entered into but for the alleged tortious interference. Plaintiff's complaint does not contain a single factual allegation that would allow the court to infer that a contractual relationship with a third party is reasonably probable. Thus, this claim must also be dismissed.

Defendants also argue, and the court agrees, that Plaintiff failed to plead actual harm or damage resulting from Defendants' conduct. Instead, Plaintiff rather generically states that relationships between CETUSA and "clients and/or prospective clients" were "actually interfered with and/or disrupted." (Compl. ¶¶ 44, 45.) Although Federal Rule of Civil Procedure 8(a) would not require that Plaintiff cite to specific numbers and the court notes that damages regarding something as speculative as a prospective contract would be difficult if not impossible to specifically calculate at this point, Plaintiff must nevertheless provide *some* factual enhancement beyond its conclusory claim. Plaintiff's inability to plead actual damages for interference with existing or prospective contracts is very likely related to Plaintiff's failure to identify in the first instance any client, contract, or reasonably likely prospective contract.

The Third Circuit has instructed district courts to grant leave to amend when a complaint is dismissed for failure to state a claim. *See Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). District courts nevertheless retain discretion to deny a plaintiff leave to amend his complaint when amendment would be futile or would cause undue delay. *Id.* at 115. Here, the complaint's lack of factual specificity can be cured and therefore the court finds that amending the complaint would not be

futile.[4]  Plaintiff has not previously filed an amended complaint, thus doing so would not cause undue delay.

      An appropriate order will issue.

                          s/Sylvia H. Rambo
                          United States District Judge

Dated:  September 2, 2011.

---

[4]  In so finding, the court rejects Defendant HDC's alternative argument that this claim should be dismissed because PUTSA preempts all other tort causes of action based on misappropriation of trade secrets. (Doc. 12 at 11, n.2.)  HDC cites 12 PA. CONS. STAT. § 5308 which states, in part, "this chapter displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of trade secrets."  However, PUTSA will only preempt Plaintiff's claim for tortious interference if the alleged confidential information at issue is determined by the court to be a trade secret. *Youtie v. Macy's Retail Holding, Inc. v. Macy's Inc.*, 653 F. Supp. 2d 612, 619 (E.D. Pa. 2009).  Such a determination would require the court to resolve questions of fact, determinations which are not appropriate for resolution at this stage of the proceedings. *See Varrato v. Unilife Corp.*, 2011 U.S. Dist. LEXIS 91791, at *12 (M.D. Pa. Aug. 17, 2011).  At this stage, the court can only conclude, as it has, that Plaintiff's complaint sufficiently alleges facts to allow the court to reasonably infer that the information at issue constitutes a trade secret.  Thus, HDC's preemption argument will not render amendment futile.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **COUNCIL FOR EDUCATIONAL TRAVEL, USA,** | : | |
| | : | **CIVIL NO. 1:11-CV-00672** |
| **Plaintiff** | : | |
| | : | |
| v. | : | |
| | : | |
| **AGATA CZOPEK and HARRISTOWN DEVELOPMENT CORPORATION,** | : | **Judge Sylvia H. Rambo** |
| | : | |
| **Defendants** | : | |
| | : | |

## **O R D E R**

In accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendants' motions to dismiss (Docs. 12 & 17) are **GRANTED** in part and **DENIED** in part as follows:

1) The motions are **DENIED** with regard to Count I of Plaintiff's complaint;

2) Defendant Czopek's motion is **DENIED** with regard to Count II Plaintiff's complaint;

      3)  The motions are **GRANTED** with regard to Count III of Plaintiff's complaint;

      4)  Plaintiff is granted leave to file an amended complaint no later than thirty (30) days from the date of this order in order to remedy the complaint in accordance with the accompanying memorandum.  If Plaintiff opts not to file an amended complaint, this action will proceed on the original complaint, absent the claim dismissed herein.

                                                           s/Sylvia H. Rambo
                                                           United States District Judge

Dated:  September 2, 2011.